# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CLIFTON PAUL MOFFAT,

                    Petitioner,                         Case Number: 2:08-CV-14571

v.                                                      HONORABLE DENISE PAGE HOOD

HUGH WOLFENBARGER,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Clifton Paul Moffat's *pro se* petition for a writ of habeas corpus. Moffat is in the custody of the Michigan Department of Corrections, serving a life sentence for first-degree premeditated murder. He raises twenty claims for habeas corpus relief. Respondent argues that all but six of these claims are barred from habeas review by procedural default and that the remaining claims are meritless. The Court denies the petition.

### I. Background

Moffat's conviction arises from the murder of Jay Thiebaut, Jr. The testimony presented at trial shows that Petitioner's wife, Laura, had an adulterous affair with Thiebaut, who was the minister of their church.

Chad Biehn, Moffat's cousin, testified that, on November 10, 2003, Moffat asked him to take a road trip with him. Biehn agreed to do so. Moffat drove Biehn's father's

car and told Biehn that they were headed to Cadillac, Michigan to find Thiebaut.  Biehn

testified that Moffat told him that his wife, Laura, was divorcing him and that she was

having an affair with Thiebaut.  Biehn testified that they were going to find Thiebaut and

give him "a real ass kicking."  Both men carried eight-inch, double-edged knives.

Once in Cadillac, the men first went to Thiebaut's home, then drove to Moffat's

wife's apartment building.  When they arrived there, Biehn saw Thiebaut arrive in a car

with the Moffat's two children.  Thiebaut left the apartment building alone approximately

twenty minutes later.  Moffat and Biehn followed him.  At some point, Thiebaut's car was

alongside theirs and Thiebaut motioned for them to pull over.  They did so.  Moffat exited

the car and Biehn saw Moffat and Thiebaut fighting.  Biehn testified that Moffat quickly

gained an advantage in the fight.  When Thiebaut was lying on the ground, Moffat and

Biehn both stomped on him.  Thiebaut attempted to flee, running toward a store across a

parking lot.  Outside the store, the fight continued.  Moffat continued to pummel

Thiebaut.  He asked Biehn for his knife, which Biehn handed over.  Biehn saw Moffat

stab Thiebaut.  Biehn and Moffat then began to walk toward their vehicle.  Biehn

continued to the vehicle, but Moffat turned back.  Biehn retrieved the car and pulled it

over to the store parking lot and picked up Moffat.  Biehn saw that Thiebaut was bleeding

heavily and knew that Thiebaut was going to die.  Biehn then drove his car over Thiebaut.

Biehn drove Moffat home, taking Moffat's shirt and shoes because they were covered in

blood.  Biehn later burned these items.  Biehn disposed of the knife Moffat used to stab

Thiebaut and cleaned blood from his car.

2

The beating, stabbing, and running over of Thiebaut were captured on the store's video camera. The surveillance videotape was played for the jury.

Forensic pathologist Joyce DeJong testified that she performed an autopsy on Thiebaut on November 11, 2003. Dr. DeJong testified that Thiebaut suffered over twenty stab wounds. The stab wounds, which punctured both of Thiebaut's jugular veins and his trachea, by themselves, were fatal and would have caused Thiebaut's death within minutes. She also testified that Thiebaut suffered a crushed skull which, by itself, was sufficient to cause Thiebaut's death. Dr. DeJong believed that Thiebaut was not dead when Biehn ran him over.

Moffat testified in his own defense. He testified that his wife and Thiebaut were having an affair. In May 2003, he had a confrontation with Thiebaut during which Thiebaut warned him that if he did not file for divorce he would never see his children again. Moffat testified that other parishioners told him that they were fearful of Thiebaut and he himself was also fearful of Thiebaut. He testified that Thiebaut began stalking him and he therefore carried a knife with him at all times.

On the night of November 10, 2003, Moffat drove to Cadillac, Michigan, with his cousin Chad Biehn because his wife, who had initiated divorce proceedings, lived there and had custody of the children that night. The court order regarding child custody provided that neither parent could have company of the opposite sex while they had custody of the children. Moffat testified that he suspected Thiebaut would be at his wife's residence and he therefore could show that she violated the court order. He denied

following Thiebaut when Thiebaut left his wife's residence.  He claimed that he intended to simply drive home.  Moffat testified that Thiebaut spotted him in Biehn's car and Thiebaut became intent on stopping Moffat.  Moffat attempted to access the freeway, but was instead cut-off by Thiebaut's vehicle.  Thiebaut exited his vehicle and approached Moffat's.  Moffat felt compelled to exit his vehicle.  When he did, Thiebaut placed his hand on Moffat's neck.  The men became engaged in a fight.  Moffat was able to wrestle Thiebaut to the ground after punching him several times.  Moffat attempted to place Thiebaut in the rear of his car, with the intention of taking Thiebaut to the police station for assaulting him.  Thiebaut struggled and, according to Moffat, grabbed Moffat's knife. Moffat testified that Thiebaut stabbed him in the abdomen with the knife.  The men fell to the pavement together and Thiebaut punched him.  Biehn handed Moffat a knife.  Moffat testified that he did not ask Biehn for the knife.  Moffat admitted to stabbing Thiebaut twice in the buttocks.

Moffat testified that, after stabbing Thiebaut twice, he stood up and walked away. Biehn followed him and told him that he better make sure he had gotten Thiebaut.  Moffat turned around and saw Thiebaut walking toward him.  Moffat testified that he remembered nothing that happened after that until he was back in the vehicle.

4

## II.  Procedural History

Following a jury trial in Wexford County Circuit Court, Moffat was convicted of first-degree premeditated murder.  The trial court sentenced him to life imprisonment without possibility of parole.

Moffat filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

I.  The trial court reversibly erred in instructing the jury, contrary to the standard jury instruction and over defense counsel's timely objection, that in determining whether defendant acted with the emotional state required for voluntary manslaughter, the jury could consider only the fight that occurred that night and could not consider other circumstances, including the adulterous affair.

II.  The trial court's instructions concerning Chad Biehn as an accomplice and that defendant could be guilty of murder as an accomplice of Biehn, were timely objected to and were reversible error where the facts did not support such accomplice instructions.

III.  (Argued in the alternative) Defendant's attorney failed to adequately develop and present the best theory of the case – which was, in effect, his primary defense pursuant to *People v Grant*, 470 Mich. 477, 485; 684 N.W.2d 686 (2004) – that the death was the result of manslaughter. Defense counsel also failed to object to inadmissible evidence and instances of prosecutorial misconduct. These errors individually and cumulatively deprived defendant of his Sixth Amendment right to the effective assistance of counsel.

The Michigan Court of Appeals affirmed the conviction, *People v. Moffat*, No. 259365 (Mich. Ct. App. Apr. 6, 2006), and denied a motion for reconsideration.  *Id.* (June 7, 2006).  The Michigan Court of Appeals also denied Moffat's motion to remand for an evidentiary hearing regarding his ineffective assistance of counsel claims.  *Id.*

5

(June 20, 2005). The Michigan Supreme Court denied Moffat's application for leave to appeal, which raised the same claims raised in the Michigan Court of Appeals. *People v. Moffat*, 477 Mich. 917 (2006).

In 2007, Moffat filed a motion for relief from judgment in the trial court, raising these claims:

I.      Defendant's constitutional right to a fair trial was denied as evidenced where medical examiner Dr. Joyce DeJong testified that victim "if not run over could have lived," this in light of the fact that Chad Biehn admitted (and pled guilty to) being the one who murdered the victim – and admitted he acted on his own, thus first degree elements are non-existent in regards defendant Moffat.

II.     Defendant's constitutional right to due process equal application of the laws and a fair trial were denied, especially in light of the fact Chad Biehn admitted to killing the victim and acting on his own (therefore the principal) with the medical examiner's testimony supporting Biehn's admissions (and this principal being sentenced in the second degree only) makes the first degree sentence imputed to Clifton Moffat res inter alios acta, under color of law, an illegal sentence/jnov denying due process/equal application of the law, where act of defendant must be cause of death.

III.    The trial court committed reversible error by improperly modifying standard jury instruction which led to misleading/confusing instructions allowing the jury to reach a conclusive presumption.

IV.    The trial court committed reversible error by imputing that jury could only consider the fight in flagrans crimin, without critical defense evidence of automatism which directly impacted defendant's due process right to present a defense (automatism).

V.     Defendant's constitutional right to a fair trial was violated when the trial court upheld that the premeditation and deliberation element of first degree murder had been proven.

VI.    Defendant's conviction/sentence (jnov) must be reversed where there is evidence of extra-judicial bias (present & presumed) in regards trial Judge

6

Charles D. Corwin (P27138).

VII.     Defendant's conviction/sentence (jnov) must be reversed whereas there is
         evidence of judicial bias present & presumed which denied/deprived
         defendant of the substantive due process/constitutionally protected right to a
         fair and impartial trial VIII. Actual prejudice is present whereas there is
         nothing on record supporting that the 28th Circuit Court of Wexford County
         ever had lawful jurisdiction.

IX.      Defendant was denied certain constitutional rights where the trial court
         failed to change venue and judge on its own sua sponte motion, in light of
         the unbridled pre-trial/trial publicity; especially whereas decedent's father
         was a well known local public figure/commissioner & public accountant for
         Wexford County; the same entity which employees the trial Judge Charles
         D. Corwin, who knows and is known by decedent's father.

X.       Defendant was denied due process/right to effective assistance of counsel,
         whereas defense counsel Thomas L. Stringer failed to object to both
         extra-judicial and judicial bias even in the face of evidence thereof.

XI.      Defendant was denied due process and evidences actual prejudice where
         defense counsel Thomas L. Stringer (P25329) failed to move for a change
         of venue/judge, especially in light of the political relationship between trial
         judge and the decedent's father, a Wexford County Commissioner.

XII      Actual prejudice and ineffectiveness of trial counsel are evidence where
         defense counsel Thomas L. Stringer (P25329) failed to move for a change
         of venue due to overwhelming local pre-trial publicity, especially while
         during jury selection, all prospective jurors were polled to see "if" they had
         seen/heard anything publicized about the defendant/decedent/case, and "all"
         answered in the positive.

XIII.    Actual prejudice with clear evidence of ineffectiveness of trial counsel
         where attorney Thomas L. Stringer (P25329) breached contractual
         obligation(s)/fiduciary duty, prejudicing not only defendant, but the People
         of the State of Michigan, where he failed to keep a promise to the court, and
         the defendant to bring forth an expert witness to support an "automatism"
         defense which was discussed and agreed upon – then he abandoned said
         defense without authorization or consent, presumably because it would cut
         into his profit margin.

7

XIV.  Trial counsel Thomas L. Stringer's failure to pursue defendant's actual and claimed defense of automatism (a superior claim) and viable defense in conjunction with manslaughter theory caused irreparable harm to defendant's case and is evidence of actual prejudice and ineffective assistance of counsel in violation of sixth amendment rights.

XV.  Irreparable harm and ineffective assistance of trial counsel are evidence where trial counsel Thomas L. Stringer (P25329) failed to object to the autopsy photographs where said photographs were not necessary, and autopsied body looked worse than actual damage caused by either defendant, and were so gruesome and inflammatory that their prejudicial impact substantially outweighed their probative value, especially in light of the medical examiner's oral testimony which would have been sufficient; thus causing actual prejudice.

XVI.  Reversible error and ineffective assistance of counsel is evinced where trial counsel Thomas L. Stringer (P25329) failed to object to crime scene photographs which falsely distorted the facts/evidence in light most prejudicial to defendant and unconstitutionally allowing the jury to absorb extra-record (illusory) information that due to false backlighting did not actually exist.

XVII.  Reversible error, ineffective assistance of trial counsel (USCA Const Am VI) and actual prejudice are evident where trial counsel Thomas L. Stringer (P25329) failed to object to blatant prosecutorial misconduct(s), where prosecutor "injected" prejudicial views and comments of his own under color of pre-trial voir dire questioning of prospective jurors.

XVIII.  Reversible error, ineffective assistance of trial counsel (USCA Const Am V and actual prejudice are evidence, where trial counsel Thomas L. Stringer (P25329) failed to object to prosecutorial misconduct(s) where prosecutor "injected" extra-record (illusory) information not offered in evidence allowing the jury to "assume" prejudicial information not in evidence, and in all reasonable likelihood the jury applied this in an unconstitutional manner severely prejudicing defendant.

XIX.  Reversible error, ineffective assistance of trial counsel (USCA Const Am VI) and actual prejudice are evidence on record, where trial counsel Thomas L. Stringer (P25329) failed to object to prosecutorial misconduct/actual prejudice where prosecutor personally vouched for his most important witness (an admitted murderer and alleged drug

8

manufacturer) and then improperly injected his own personal beliefs as to the trustworthiness of the evidence of this person.

XX.   Trial Counsel Thomas L. Stringer (P25329) made errors so serious that counsel was not functioning as the counsel guaranteed the defendant under U.S.C.A. Const Am VI, *Strickland v Washington* 466 U.S. 668; 106 S. Ct 2052; 80 L.ED.2d 674 (1984); *People v Pickens* 466 Mich. 298, 314, 318; 521 N.W.2d 797 (1994).  Factual and legal evidence of these claim(s) individually and cumulatively forming the basis of reversible error, where trial counsel was so deficient as to constitute manifest injustice.

XXI.   Prosecutorial misconduct(s) and actual prejudice occurred when prosecutor under color of law/color of questioning prospective jurors, injected improper comments and personal perspective to jurors which was severely prejudicial to defendant and denied him a fair and impartial trial guaranteed under U.S.C.A. Const. Am. V & VI by improper acts of an officer of the court.

XXII.   Reversible error and actual prejudice occurred, denying defendant a fair and impartial trial when prosecutor injected extra-record information not placed in evidence, improperly allowing the jury to assume this information was evidence, allowing by extension, the jury to reach a conclusive presumption based on said extra-record information, which in all reasonable likelihood the jury used; violating all constitutional guarantees to a fair impartial trial and constituting manifest injustice.

XXIII.   Reversible error manifest injustice and substantive prejudice occurred the instant the prosecutor vouched for the credibility of his witness Chad Biehn (an admitted murderer and alleged drug manufacturer); and then vouched for the testimony of this alleged key witness.

XXIV.   The individual and cumulative effect of errors and misconduct(s) evidenced from all officers of the court (i.e Judge, Prosecutor & defense counsel; all bar attorneys) and the/their accompanying prejudice denied defendant a fair trial especially where throughout the trial the Prosecutor resorted to improper means to insure a conviction, while the Judge (a presumed friend and political associate of the defendant's father, Wexford County Commissioner Jay Thiebaut, Sr.) turned a blind eye, this impartiality being reasonable questioned as prejudicial to the defendant as there are factual grounds embodied in federal statute that mandated the judge to disqualify himself.

9

XXV. Defendant/appellant was denied effective appellate advocacy (guaranteed under USCA Const Am VI) where appellate counsel failed to secure remand and to address key issues; and failed to support critical motions with proper affidavits resulting in said motions being dismissed without hearing the merits, thus causing actual prejudice.

XXVI. Actual prejudice and ineffective appellate advocacy is evidenced where appellate counsel Curtis R. Hadley (P32160) failed to address the Court's constitutionally infirm charging document, improper service, improper service of process; all issues arising under FRCP Rule(s) 9(a), 12(b) & 19.

The trial court denied the motion. *People v. Moffat*, No. 03-007071-FC (Wexford County Cir. Ct. Sept. 11, 2007).

Moffat filed an application for leave to appeal in the Michigan Court of Appeals raising the same claims raised in the trial court. The Michigan Court of Appeals denied leave for failure to establish entitlement to relief under M.C.R. 6.508(D). *People v. Moffat*, No. 03-7071 (Wexford County Circuit Court Sept. 11, 2007). The Michigan Court of Appeals and Michigan Supreme Court denied Moffat's applications for leave to appeal the denial of his motion for relief from judgment. *People v. Moffat*, Michigan Court of Appeals No. 280756 (Mich. Ct. App. Apr. 18, 2008); *People v. Moffat*, 482 Mich. 989 (Mich. 2008).

Moffat filed a second motion for relief from judgment on February 11, 2008, raising this claim:

Defendant is not guilty ab initio in light of a remedial/procedural change in the law (the Castle Doctrine); i.e., P.A. No. 309, effective October 1, 2006: the "self-defense act" (no duty to retreat) MCL 780.971-72.

The trial court denied the motion because Moffat failed to satisfy any of the

10

exceptions allowing the filing of a successive motion for relief from judgment. *People v. Moffat*, No. 03-7071-FC (Wexford County Circuit Court Apr. 14, 2008). The Michigan Court of Appeals dismissed Moffat's delayed application for leave to appeal the denial of his motion for relief from judgment because Michigan Court Rules do not allow a defendant to appeal the denial or rejection of a successive motion for relief from judgment. *People v. Moffat*, No. 285333 (Mich. Ct. App. June 18, 2008). The Michigan Supreme Court also denied leave to appeal. *People v. Moffat*, 482 Mich. 991 (Mich. 2008).

Moffat then filed the pending petition. He raises these claims:

I.    Petitioner's constitutional right to a fair trial was violated where elements of first degree murder are non-existent and evidence presented by the State's witness/medical examiner Dr. Joyce DeJong support this fact; Petitioner is entitled to a new trial where the jury was allowed to consider this charge in violation of due process, which substantially decreased Petitioner's chances of manslaughter or acquittal.

II.   Petitioner was denied constitutional right to substantive due process, equal application of laws and fair trial, in light of third party culpability where Chad Biehn admitted murdering the victim and acting on his own.

III.  The trial court improperly modified the standard jury instruction which led to a conglomerate of misleading and confusing instructions: "[y]ou may not consider," which followed, " [y]ou may only consider in and of itself"; allowing the jury to reach a conclusive presumption in direct violation of constitutional due process.

IV.   The trial court denied Petitioner the use of critical defense evidence: automatism, by imputing that the jury could only consider the fight in flagrans crimen, which directly impacted his constitutional due process right to present a defense (automatism).

V.    Petitioner's conviction must be reversed (jnov) where evidence of judicial

11

and extra—judicial bias is present and presumed in regards Trial Judge
Charles D. Corwin (P27138).

VI.    Petitioner was denied substantive due process where trial court failed to
       change venue sua sponte in light of unbridled pre-trial publicity, where
       defendant's father was a well known local public figure associated with the
       Trial Judge.

VII.   Trial defense attorney failed to object to both extra-judicial and judicial
       bias, in light of request by Petitioner and evidence of same.

VIII.  Trial defense attorney failed to move for a change of venue and judge after
       being requested to, and being told of extra-judicial relationship between
       Trial Judge Charles D. Corwin and defendant's father; this caused actual
       prejudice.

IX.    Trial defense attorney failed to move for change of venue regards
       overwhelming local pre-trial/publicity especially in light of jury selection;
       all jurors answered in the positive when asked if they had heard/seen
       anything publicized about Petitioner/decedent/case.

X.     Not only ineffectiveness, but actual prejudice and breach of fiduciary
       duty/breach of contractual obligations by trial defense attorney, that he
       would produce an expert witness to support an automatism defense, and
       arbitrarily abandoned his promise presumably because it would cut into his
       profit margin.

XI.    Trial defense attorney failed to pursue Petitioner's actual and claimed
       defense of automatism which is viable in conjunction with manslaughter
       theory.

XII.   Trial defense attorney failed to object to autopsy photographs which
       prejudicial impact substantially outweighed their probative value, especially
       in light of the medical examiner's oral testimony; this also caused actual
       prejudice.

XIII.  Trial defense attorney failed to object to crime scene photographs which
       (unconstitutionally) allowed the jury to absorb extra-record (illusory)
       information that did not exist-regards false backlighting.

XIV.   Trial defense attorney failed to object to blatant prosecutorial misconduct(s)

12

when prosecutor injected extra-record (illusory) information not offered in evidence that in all reasonable likelihood the jury applied in an unconstitutional manner, thus causing actual prejudice.

XV. Defense attorney failed to object to prosecutorial misconduct(s) when the prosecutor improperly vouched for his allegedly most important witness; and then improperly injected his own beliefs as to the trustworthiness of this person's testimony.

XVI. Trial defense attorney made errors so serious that counsel was not functioning as counsel guaranteed the Petitioner (6th Amend, Bill of Rights, Organic Constitution); the errors individually and cumulatively form issue(s) VII through XVI and are consolidated for the court's/reviewer's convenience only, each issue is in itself a substantive argument/evidence of ineffective assistance of trial counsel.

XVII. Prosecutorial misconducts are evident where (1) the prosecutor injected improper comments (2) the prosecutor injected extra-record information not placed in evidence and misrepresented facts, improperly allowing the jury to assume the information was evidence via a conclusive presumption (3) the prosecutor vouched for the credibility of Chad Biehn and this alleged key witness' testimony all caused manifest injustice and reversible error.

XVIII. Petitioner was denied affective appellate advocacy as guaranteed under the Bill of Rights, Amendment VI, of the Organic Constitution where appellate counsel (1) failed to secure remand (2) failed to address key issues (3) failed to support critical motions with proper affidavits, resulting in said motions being dismissed without being heard on the merits, and (4) failed to address the Court's constitutionally infirm charging document, improper service and improper service of processes, issues arising under F.R.C.P. 9(a), 12(b) and 19: all causing actual prejudice.

XIX. There is nothing on record supporting that the 28th Circuit Court of Wexford County ever had lawful jurisdiction over the Petitioner.

XX. Petitioner is not guilty ab initio in light of a remedial/procedural change in the law (the Castle Doctrine): i.e., P.A. 2006, No. 309, effective October 1, 2006: the "self-defense act" (no duty to retreat) MCL 780.971-72.

## III. Standard of Review

13

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

14

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams,* 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established

15

law" are to be determined solely by resort to Supreme Court rulings, the decisions of

lower federal courts may be instructive in assessing the reasonableness of a state court's

resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing*

*Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp.

2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption

only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

### IV.  Discussion

### A.  Jury Instructions

Moffat challenges the jury instructions in his first, second, third, and fourth habeas

claims.  In his first and second claims, he argues that the trial court erred in giving the

jury a first-degree murder instruction under an aiding and abetting theory because Chad

Biehn admitted running over the victim with his vehicle and stated that he did not act at

Moffat's behest.  In his third and fourth habeas claims, he argues that the trial court's

instruction on manslaughter was confusing and improperly instructed the jury that they

could not consider the victim's affair with Moffat's wife as bearing upon the issue of

provocation for manslaughter.

"In a criminal trial, the State must prove every element of the offense, and a jury

instruction violates due process if it fails to give effect to that requirement.  Nonetheless,

16

not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal citation omitted). An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)*,* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). In *Neder v. United States*, 527 U.S. 1, 9, (1999), the Supreme Court explained that a jury instruction "that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."

The Michigan Court of Appeals held that the evidence amply supported a first-degree murder instruction under an aiding and abetting theory. The court considered the following in reaching this decision: Biehn had no prior relationship with the victim, Moffat requested that Biehn accompany him to Cadillac; he told Biehn about the relationship between his wife and the victim; and Moffat told Biehn that they were going to give the victim an "ass kicking." Further, the court considered that the testimony presented at trial showed that both Moffat and Biehn were involved in kicking and

beating the victim and that Moffat used Biehn's knife to stab the victim.  The court of

appeals concluded that "the jury could reasonably have concluded that defendant

effectively communicated to Biehn that he wanted Biehn to help him kill the victim by his

conduct before and after the altercation."  *Moffat*, slip op. at 3.

Federal courts are bound by the state courts' interpretation of their own laws.  *See*

*Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975).  Where a state appeals court finds that

the instruction given by the trial court accurately reflected state law, this Court must defer

to that determination.  *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000).

Because the Michigan Court of Appeals determined that it was proper for the trial court to

give the jury an instruction on aiding and abetting, and Moffat has not shown that holding

was unreasonable, he is not entitled to habeas relief on this claim.

Moffat also claims that the trial court erred in its voluntary manslaughter

instruction by improperly instructing the jury that, when assessing whether adequate

provocation existed, they could consider only the physical altercation immediately

preceding the victim's death.  The Michigan Court of Appeals held that the trial court's

instruction was proper:

> Voluntary manslaughter consists of a defendant killing in the heat of
> passion, the passion being caused by adequate provocation and there being
> no lapse of time during which a reasonable person could have controlled his
> or her passions.  *People v. Tierney*, 266 Mich. App. 687, 714 (2005).  "The
> degree of provocation required to mitigated a killing from murder to
> manslaughter 'is that which causes the defendant to act out of passion rather
> than reason.'"  *Id.*  at 714-15, *quoting People v. Sullivan*, 231 Mich. App.
> 510, 5189; 586 N.W.2d 578 (1998), *aff'd by equal division* 461 Mich. 992
> (2000).  For the provocation to be adequate, it must be "'that which would

18

cause a reasonable person to lose control.'" *Tierney, supra* at 715, quoting *Sullivan, supra* at 518. . . . "However, '[w]here, as a matter of law, no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation.'" *Id.*

In the present case, defendant argued that the jury should be permitted to consider evidence of all of the circumstances surrounding the killing in determining whether adequate provocation existed to mitigate it from murder to manslaughter, including defendant's knowledge of the victim's affair with defendant's wife. However, defendant testified at trial that he had learned of the affair some eleven months before the incident giving rise to this case. Given the enormous time lapse between the time defendant learned of the affair and the time the victim was killed, we believe that no reasonable jury could find that defendant's knowledge of the victim's affair, taken alone, was adequate provocation to mitigate the killing from murder to manslaughter. . . . [U]nder these circumstances the court was entitled to exclude this evidence, as taken alone, from the jury's consideration of provocation.

While it might have been erroneous for the court to completely bar the jury from any consideration of the relationship between the complainant and defendant's wife in considering the question of provocation, the court did not do so. In giving the jury instruction on voluntary manslaughter, the court did initially . . . state "you may only consider the facts and circumstances of the physical altercation as you find them to be between the defendant and the [victim]." However, the court then went on in the next sentence immediately to clarify "[y]ou may not consider *in and of itself* the testimony and evidence regarding the alleged affair between [the victim] and the defendant's former wife" (emphasis added). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. . . . Even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. . . . In the present case, reading the voluntary manslaughter jury instruction given by the court as a whole, it is clear that the court did not bar the jury from *any* consideration of the affair in making its determination regarding provocation, but rather barred the jury from considering the affair as the *only* evidence in making the determination. Thus, the court fairly presented the issue to be tried and sufficiently protected defendant's rights with regard to this matter.

*Moffat*, slip op. at 1-2.

19

The Michigan Court of Appeals did not make an unreasonable determination of the facts; rather it applied the facts to the elements of Michigan's crime of voluntary manslaughter, specifically provocation, and found that the instruction was proper. A presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. 28 U.S.C. § 2254(e)(1); *Hardaway v. Withrow*, 305 F.3d 558, 563 (6th Cir. 2002). The jury instruction accurately reflected Michigan law and properly set forth the burden of proof on each element. Therefore, the instruction did not violate Moffat's right to due process.

### B. Alleged Ineffective Assistance of Counsel

Moffat raises four claims of ineffective assistance of trial counsel which are not procedurally defaulted. Specifically, Moffat argues that counsel was ineffective in: (i) emphasizing a defense of self-defense rather than provocation; (ii) failing to object to admission of misleading crime scene photographs; and (iii) failing to object to the prosecutor's vouching for the credibility of Chad Biehn. Further, he argues that the cumulative effect of counsel's errors rendered counsel ineffective.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective

20

standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the

21

attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, ___ U.S. ___, 131 S. Ct. at 788.

First, Moffat argues that counsel was ineffective in emphasizing the defense of self-defense rather than the defense of provocation, when, according to Moffat, the latter defense was far stronger. The Michigan Court of Appeals noted that both potential defenses were very weak, but the self-defense instruction at least offered the possibility of acquittal, while the manslaughter defense did not. The Michigan Court of Appeals concluded that, considering all of the evidence presented at trial, counsel's strategic decision to focus on a self-defense theory was not ineffective.

Moffat was entitled to competent representation, not a "perfect defense." *Crehore v. U.S.*, 127 F. App'x 792, 796 (6th Cir. 2005). Counsel focused on a self-defense theory

of defense, but did not abandon the argument that the death was manslaughter rather than murder.  Counsel elicited testimony in support of each defense and argued both defenses in closing argument.   While another attorney may have proceeded differently, "[t]here are . . . 'countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.'" *Richter*, 131 S. Ct. at 788-89.  Competent counsel need not be "a flawless strategist or tactician" and "an attorney may not be faulted for a reasonable miscalculation."  *Id.* at 791.   The Court concludes that counsel's strategic decision was reasonable in light of the circumstances of the case including Moffat's own trial testimony which clearly supported a self-defense theory and the Michigan Court of Appeals' decision finding that counsel was not ineffective is not contrary to or an unreasonable application of *Strickland*.

Second, Moffat argues that counsel was ineffective in failing to object to the admission of misleading crime scene photographs.  The crime scene photographs made it appear that the crime scene was far bloodier than it actually was because a red store sign reflected on the wet pavement.  The Michigan Court of Appeals addressed only *Strickland's* prejudice prong and held that Moffat suffered no prejudice as a result of the admission of the photographs because the jury was repeatedly informed that the red lighting made the scene appear to be bloodier than it actually was.  This Court concurs with the state court's finding in this regard.  The trial transcript shows that the jury was repeatedly cautioned that the photographs did not accurately depict the amount of blood at the scene.  Habeas relief is denied on this claim.

23

Third, Moffat argues that the prosecutor improperly vouched for the credibility of prosecution witness Chad Biehn when he elicited testimony that Biehn testified pursuant to a plea agreement which required him to tell the truth and in highlighting consistencies between Biehn's original statements to police and his trial testimony.  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted).  The Sixth Circuit has consistently held it is not improper vouching to refer to a promise to testify truthfully as part of a plea agreement.  *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005).  "The existence of a plea agreement can cut both ways, either supporting the witness' credibility by showing his or her interest in testifying truthfully, or, . . . impeaching the witness' credibility by showing his or her interest in testifying as the government wishes regardless of the truth."  *United States v. Reid*, 625 F.3d 977, 985 (6th Cir. 2010) (internal quotations omitted).

The Michigan Court of Appeals held that counsel was not ineffective for failing to object to the prosecutor's comments regarding Biehn because the comments did not amount to improper vouching.  The record before the Court shows that the prosecutor did not place the prestige of his office behind Biehn's testimony nor did he imply that he was privy to some special knowledge regarding Biehn's truthfulness.  Additionally, the prosecutor did not vouch for Biehn's credibility by discussing inconsistencies between Biehn's custodial statements and his trial testimony.  The prosecutor simply argued to the

24

jury that the inconsistencies were minor and not regarding significant issues. The Court, therefore, finds that the state court's conclusion the counsel was not ineffective in failing to object to the prosecutor's comments was not contrary to or an unreasonable application of Supreme Court precedent.

Finally, Moffat argues that the cumulative effect of counsel's many alleged errors entitles him to habeas relief. The Sixth Circuit Court of Appeals has held that constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Even if individual errors, when viewed cumulatively, could amount to a deprivation of due process, this claim is meritless. This Court has held that none of the arguments raised by Moffat constitute error, therefore, there is no cumulative error to be addressed.

### C. Procedural Default

Respondent argues that the claims numbered I, IV-XII, XIV, XVII, XIX, and XX, are procedurally defaulted. For the reasons explained, the Court finds that all of the claims identified by Respondent, with the exception of claims I and IV, are procedurally defaulted.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*,

431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th

Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained

state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*,

501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial,

it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

 The claims numbered I and IV were presented in Moffat's appeal of right.

Although they were not presented in precisely the same language as they are presented in

the habeas petition, Moffat raised the substance of these claims on direct review.  The

Michigan Corut of Appeals addressed the merits of these claims without reference to a

state court procedural rule.  Similarly, the Michigan Supreme Court denied leave to

appeal because the court was not persuaded that the claims presented should be reviewed.

Neither state appellate court declined to address these claims based upon an adequate and

independent state procedural rule and they are not procedurally defaulted.  The merits of

these claims are addressed *supra*.

 Moffat presented claim numbers V-XII, XIV, XVII, and XIX for the first time in

his first motion for relief from judgment.  The Michigan Supreme Court and Michigan

Court of Appeals denied relief pursuant to Michigan Court Rule 6.508(D), which

provides, in part, that a court may not grant relief to a defendant if the motion for relief

from judgment alleges grounds for relief which could have been raised on direct appeal,

absent a showing of good cause for the failure to raise such grounds previously and actual

prejudice resulting therefrom.  The United States Court of Appeals for the Sixth Circuit

recently has held that the form order used by the Michigan appellate courts to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan Supreme Court and Michigan Court of Appeals to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner could not establish cause and prejudice because his underlying claims lacked merit and that he had not shown that a miscarriage of justice had occurred. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse the false-evidence claim. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) ("[I]neffective assistance of counsel can provide the necessary 'cause' for the procedural default"). The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v.*

27

*Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

The trial court, in denying Moffat's first motion for relief from judgment, held that appellate counsel was not ineffective. None of the claims Petitioner argues his appellate attorney should have raised on appeal have been shown to have any merit. Therefore, Petitioner cannot show that counsel was ineffective in failing to raise these issues on appeal.

Moffat's final claim, that a retroactive change in Michigan law invalidates his conviction, was raised for the first time in his second motion for relief from judgment. The last state court to address these claims, the Michigan Supreme Court, held that these claims were barred from review under M.C.R. 6.508(G)(2), which limits a defendant to one post-conviction motion. Michigan Court Rule 6.508(G) became effective in 1995, well before Petitioner filed his first motion for relief from judgment. That rule is an

28

adequate and independent state court procedural rule and was clearly established and regularly followed at the time Petitioner filed his first motion for relief from judgment. *See People v. Ruiz*, 465 Mich. 937 (Mich. 2001); *People v. Bell*, 462 Mich. 868 (Mich. 2000); *People v. Myers*, 459 Mich. 980 (Mich. 1999); *People v. Hill*, 459 Mich. 914 (Mich. 1998). This claim is also procedurally defaulted unless Moffat can establish cause and prejudice to excuse the default or that failure to consider the claims would result in a fundamental miscarriage of justice.

Moffat asserts ineffective assistance of appellate counsel as cause to excuse this procedural default. The state court defaulted this claim because Moffat did not raise it in his first motion for relief from judgment. Moffat's appellate attorney's performance on direct review would not excuse Moffat's failure to present the claim in his first motion for relief from judgment. Accordingly, Moffat has failed to establish cause to excuse his procedural default of this claim. Because Moffat does not establish cause to excuse the default of this claim or the claims presented for the first time in his motion for relief from judgment, habeas review is barred unless Moffat can show that failure to consider any of the claims would result in a fundamental miscarriage of justice.

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."

29

*Id.* at 327.  Petitioner fails to present new, reliable evidence in light of which no

reasonable juror would have found him guilty.  Therefore, Petitioner's claims numbered

V-XII, XIV, XVII, and XIX are procedurally barred.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

31

**VI.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


**s/Denise Page Hood**
**United States District Judge**

Dated:  **September 30, 2011**

**I hereby certify that a copy of the foregoing document was served upon Clifton Moffat #511589, 320 N. Hubbard, St. Louis, MI 48880 and  counsel of record on September 30, 2011, by electronic and/or ordinary mail.**

**s/LaShawn R. Saulsberry**
**Case Manager**